**FIRST PACIFIC BANCORP, INC.;**
**First Pacific Bank,**
**Plaintiffs–Appellants,**

v.

**L. William BRO; Morrie S. Sachs; Harry L. Fein; Sheldon Rabinoff; Alfred Spivak; Lowell T. Patton; Alfred K. Vallely; Donald R. Williams; Rifkind, Sterling & Levin, Defendants–Appellees.**

No. 87–5778.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 6, 1988.

Decided May 23, 1988.

Peter L. Spinetta, Spinetta, Randick & O'Dea, Oakland, Cal., for plaintiffs-appellants.

Irving M. Gross, Robinson, Diamant, Brill & Klausner, and Douglas Day, Crowe & Day, Los Angeles, Cal., for defendants-appellees.

Before FERGUSON, BEEZER and LEAVY, Circuit Judges.

BEEZER, Circuit Judge:

First Pacific Bancorp, Inc. and First Pacific Bank ("Appellants")[1] appeal summary judgment of their claim under section 1964 of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968 (hereinafter "RICO") in favor of L. William Bro, Morrie S. Sachs, Harry L. Fein, Sheldon Rabinoff, Alfred Spivak, Lowell T. Patton, Alfred K. Vallely, Donald R. Williams, and Rifkind, Sterling & Levin, a professional law corporation ("Appellees").

Appellants argue that summary judgment was not a proper basis for dismissal.[2] They also argue that discovery was unfairly shortened, that sufficient damages were alleged, and that a sufficient "pattern" of RICO "predicate acts" was alleged to prevent summary judgment. Finally, they claim to have been denied the opportunity to adequately argue damages. We affirm.

I

Each appellee, with the exception of the Rifkind law firm, was a shareholder in First Pacific Bancorp, Inc. and First Pacific Bank of California (collectively "the

---

1. First Pacific Bank is a California corporation wholly-owned by First Pacific Bancorp, Inc., a Delaware corporation.

2. Appellants argue that Fed.R.Civ.P. 12(b)(6) (failure to state a claim), rather than Fed.R. Civ.P. 56 (summary judgment) was the proper basis for dismissal.

Bank"). Appellees Bro, Sachs, Rabinoff, Fein and Spivak were members of the Board of Directors of the Bank from 1980 to 1984. Appellees Vallely, Patton and Williams were not.

As shareholders, appellees formed a group in early 1984 to solicit proxies for an annual shareholder meeting to be held April 2, 1984. This group apparently convened on discovering that certain appellees, then on the Board of Directors, were not slated for renomination by management.

The group decided to initiate a shareholders' derivative suit, in addition to soliciting proxies in favor of an alternative slate. The asserted purpose of these actions was to place a "watchdog" presence on the Board and/or to trigger a "buy-out of unhappy shareholders." The Rifkind firm served as counsel for the group during the proxy solicitation battle and the formative stages of the derivative suit.

The group solicited more than ten proxies, intending to vote them at the 1984 meeting. Appellees asserted that they had not been informed, prior to solicitation, of filing requirements under sections 13(d) of the Securities Exchange Act of 1934 ("the 1934 Act"), 15 U.S.C. § 78m, and Sec.Reg. 240 240.13(d)–1, and 14(a) of the 1934 Act, 15 U.S.C. § 78n and Sec.Reg. 240.14(a)–1. Appellees concede that they did not file such a statement under sections 13(d) or 14(a) of the 1934 Act.

The proxies did not pertain to purchase or to sale of Bancorp shares. Likewise, statements made to shareholders from whom proxies were sought did not relate to purchase or to sale of Bancorp shares.

Although a draft shareholders' derivative complaint was delivered to Bancorp's board of directors in March 1984, appellees subsequently decided not to file or to serve.

There is no indication in the record that during proxy solicitation appellees made any statements leading to the obtaining of money or property from appellants or from appellants' board of directors. There is no indication that appellees' proxy solicitation resulted in any corporate action or in any physical harm to a director.

At the 1984 Board meeting, all proxies solicited by appellees were disallowed.[3] Prior to the only shareholder meeting held thereafter,[4] appellees did not attempt to solicit proxies.

Appellants now seek treble damages under RICO, 18 U.S.C. § 1962.

The Bank presented evidence that average deposits for 1985 decreased 21%, Bank loans decreased 38%, and average loans decreased 24%. In related bank documents, however, these reductions are expressly attributed to "deliberate asset reduction" and sale of the Bank's Santa Monica branch.

Appellants presented no other evidence of damages resulting from appellees' proxy solicitations, unfiled derivative suit, or alleged threats.

Appellants allege that the proxy solicitation involved wire fraud, mail fraud, and "extortive acts" constituting RICO "predicate acts."

Appellants filed their complaint on April 27, 1984. The complaint was dismissed in February 1985. An amended complaint was filed in May 1985. In June 1986, the court ordered a discovery cut-off of October 31, 1986, setting trial for February 1987. Appellants noticed at least eight depositions between August and October 1986.

Of eight appellees, five were deposed before October 22, 1986. On this date, appellees sought summary judgment. Shortly thereafter, three remaining depositions were commenced.

In December 1986, the court entered an "Order Dismissing Claim for Relief and Specifying Facts That Appear Without Substantial Controversy." In March 1987, the court entered final judgment, confirming summary judgment for appellees on the RICO claim.

---

**3.** No proxies solicited by appellees were voted at this meeting.

**4.** A second meeting was held in 1986.

Appeal is timely from the March 1987 order. We have jurisdiction pursuant to 28 U.S.C. § 1294.

## II

Appellants argue that summary judgment was procedurally improper.

If "matters outside the pleading are presented to and not excluded by the court, [a motion to dismiss for failure to state a claim] shall be treated as one for summary judgment." Fed.R.Civ.P. 12(b). *See Darring v. Kincheloe,* 783 F.2d 874 (9th Cir. 1986). Pleadings in this case were accompanied by depositions. Summary judgment was procedurally proper.

## III

■ We review a district court's rulings governing discovery for abuse of discretion. *Hatch v. Reliance Ins. Co.,* 758 F.2d 409, 416 (9th Cir.), *cert. denied,* 474 U.S. 1021, 106 S.Ct. 571, 88 L.Ed.2d 555 (1985). Appellants argue that they were unable to complete discovery. Prior to summary judgment, a majority of defendant-appellees were deposed. Prior to the motion for reconsideration, all appellees' depositions had been taken.[5]

Appellants fail to provide a satisfactory explanation for failure to depose other witnesses during the two-and-one-half years between filing of the complaint and summary judgment. Other statements by appellants appear to overstate the number of witnesses required or scheduled for depositions[6] and to confirm that all or most relevant depositions were complete by the date of summary judgment.[7] Appellants stated in district court, prior to summary judg-

ment, that "*all* [of appellants' depositions are] *now set* [,] with the concurrence of witnesses and previous counsel and the parties[,] to be completed in October, 1986...." The summary judgment hearing was held November 24, 1986. The summary judgment was not entered until December 8, 1986. Thus, discovery was substantially complete prior to entry of summary judgment.

## IV

Appellants argue that there remain genuine issues of material fact.

Summary judgment is reviewed de novo in determining whether a genuine issue of material fact exists. *Fidelity Financial Corp. v. Federal Home Loan Bank,* 792 F.2d 1432, 1437 (9th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987); *Jewel Cos. v. Payless Drug Stores Northwest,* 741 F.2d 1555, 1564 (9th Cir. 1984). Summary judgment may be upheld on a different ground from the ground on which the district court relied. *Id.* at 1564; *Calnetics Corp. v. Volkswagen of America, Inc.,* 532 F.2d 674, 682 (9th Cir.), *cert. denied,* 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976).

### A

Appellants assert that the district court erred in requiring more than one "scheme" to establish a "pattern of racketeering." While we do not dispute that one "scheme" is sufficient, we uphold the district court's finding on a different ground.

We acknowledge that the allegations required to establish a pattern of racketeer-

---

5. Appellants' quotation from fn. 14 in *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,* 690 F.2d 1240, 1250 (9th Cir.1982), *cert. denied,* 459 U.S. 1227, 103 S.Ct. 1234, 75 L.Ed.2d 468 (1983), is taken out of context. The statement that such a motion can be brought "at any time, and normally will be made before any substantial discovery has been conducted," was not meant to rewrite Fed.R.Civ.P. 12(b). This statement implies only that such a motion will be timely "at any time ... *before pleadings,*" Fed.R.Civ.P. 12(b)(6) (emphasis added).

6. Appellants asserted an unexplained need for more than one hundred and twenty other depositions.

7. The record indicates that most depositions of defendants were completed on or before the date that the summary judgment motion was filed. A subsequent claim of new, indispensable and undeposed witnesses is belied by appellant's previous claim that all depositions were "set" and a "good number" completed. No facts are alleged which would support the assertion that new witnesses were necessary, in light of the depositions completed.

ing have recently been the focus of considerable debate in federal courts. *See, e.g., Medallion Television Enters, Inc. v. SelecTV*, 833 F.2d 1360 (9th Cir.1987); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191–92 (9th Cir.1987) (collecting cases); *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1469 n. 1 (9th Cir.1987) (collecting cases); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 51 (2d Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

RICO states that a "pattern of racketeering" requires "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Until recently, we shared the prevailing uncertainty as to whether the two requisite acts could appear within one scheme or were required to appear in more than one scheme. We have concluded that one scheme or criminal episode suffices when two related "predicate acts" are alleged and supported. *Sun Savings*, 825 F.2d at 193–94; *California Architectural*, 818 F.2d at 1469; *Medallion*, 833 F.2d 1360.[8]

Here, the acts alleged may have been part of one "scheme," but we conclude that the requisite "predicate acts" required to establish a "pattern of racketeering" are absent.

### B

Appellants assert that the district court erred by not finding evidence of RICO "predicate acts."

Title 18, U.S.C. § 1964(c) provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor...."

Title 18, U.S.C. § 1962(c) states:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity....

18 U.S.C. § 1962(c).

Title 18, U.S.C. § 1961(1) defines "racketeering" as, inter alia, "extortion," "wire fraud," "mail fraud," or "fraud in the sale of securities."

■ Appellants argue that failure to file under sections 13(d) and 14(a) of the 1934 Act constitutes a predicate act of "fraud in the sale of securities," pursuant to 18 U.S.C. § 1961(1)(D). They cite *Spenser Cos., Inc. v. Agency Rent–A–Car, Inc.*, 1981 Fed.Sec.L.Rep. (CCH) ¶ 98,361 (D.C.Mass. 1981), which urges "liberal" construction of RICO.

Failure to comply with a provision not relating to "sale" of securities, such as section 13(d) or 14(a) of the 1934 Act, does not supplant the statutory language requiring "fraud in the sale" of securities. Thus reliance on *Spencer* is misplaced. *See Bayly Corp. v. Marantette*, 1982 Fed. Sec. L.Rep. (CCH) ¶ 98,834 (D.D.C.1982). In *Bayly*, the court stated that when section 13(d) and similar provisions are violated, "the RICO provisions ... have no application as ... an alternative or cumulative remedy for private plaintiffs alleging securities fraud." *Bayly*, ¶ 98,834 at para. 15.[9] Moreover, 18 U.S.C. § 1961(1)(D) requires evidence of a sale.[10] Neither proxy solicitation nor appellees' shareholder derivative suit constitutes a "sale" of securities. Accordingly, failure to file under sections 13(d) and 14(a) of the 1934 Act is not a RICO "predicate act."

■ Appellants allege the "predicate acts" of wire and mail fraud. Criminal mail fraud, 18 U.S.C. § 1341, is a RICO "predicate act" 18 U.S.C. § 1961(1)(B). The second clause in the statute, however, requires that such a violative act be perpetrated "for obtaining money or property by

---

**8.** If two predicate acts are to constitute a "pattern," they must also be "relate[d]." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985).

**9.** See *also, Adair v. Hunt Int'l Resources Corp.*, 526 F.Supp. 736 (N.D.Ill.1981).

**10.** See, *e.g., International Data Bank Ltd. v. Zepkin*, 812 F.2d 149 (4th Cir.1987) (fraud in sale of securities required under RICO).

means of false or fraudulent pretenses." 18 U.S.C. § 1341.

While proof of actual fraud is unnecessary, *Farrell v. United States*, 321 F.2d 409, 419 (9th Cir.1963), *cert. denied*, 375 U.S. 992, 84 S.Ct. 631, 11 L.Ed.2d 478 (1964); *United States v. Siegel*, 717 F.2d 9 (2d Cir.1983), use of the mail with false or fraudulent pretenses for the specific purpose of causing pecuniary loss must be alleged. *United States v. Dixon*, 536 F.2d 1388 (2d Cir.1976). *See Sigmond v. Brown*, 828 F.2d 8, 9 (9th Cir.1987); *Siegel*, 717 F.2d at 9. As the Second Circuit stated in *Dixon*, involving proxy solicitation:

> [O]ur research has discovered [no case] which has sustained a conviction for mail fraud on the basis of nothing more than the failure to mail a correct proxy solicitation where this was not in furtherance of some larger scheme contemplating pecuniary loss to someone or direct pecuniary gain to those who designed it.

536 F.2d at 1399.

Similarly, the record in this case does not support mail fraud.

The allegation of wire fraud is also unsupported, since there is no evidence of interstate wire communication. Title 18, U.S.C. § 1343; *compare Utz v. Correa*, 631 F.Supp. 592, 596 (S.D.N.Y.1986).

Finally, appellants assert that the shareholder derivative suit and alleged "threats" made to a bank director constitute acts of "extortion" under RICO, 18 U.S.C. § 1961(1)(A).

 The proposed shareholder derivative suit was neither served nor filed. Appellants concede that it was not a catalyst for any corporate action. Accordingly, it is not an extortionate act. *See I.S. Joseph Co.,*

*Inc. v. J. Lauritzen A/S*, 751 F.2d 265 (8th Cir.1984). Moreover, it does not otherwise qualify as a "predicate act" for RICO purposes. *See Flowers v. Continental Grain Co.*, 775 F.2d 1051, 1053 (8th Cir.1985); *see also, American Nursing Care of Toledo v. Leisure*, 609 F.Supp. 419, 430 (N.D.Ohio 1984) (threat of litigation not predicate act for RICO purposes).

 The alleged "threats" are insufficient. Extortion by threat requires "fear." *I.S. Joseph Co.*, 751 F.2d at 267. Fear was neither alleged nor discernible from the director's declaration. In addition, even if the director's declaration established fear, it failed to identify any corporate action which the imposition of fear might have been intended to compel. Absent such support, the allegation of extortion collapses.

### C

Appellants assert that they were denied the opportunity to argue damages. The summary judgment order states "plaintiffs suffered no damages." The record establishes that appellants were given ample opportunity to present a damage claim. They did not. Absent damages, the RICO claim can not be sustained.[11] Since actual injury must be reasonably controverted to prevent summary judgment, under 18 U.S.C. § 1962 and § 1964, and appellants failed to make a showing of actual injury,[12] we uphold the grant of summary judgment.

AFFIRMED.

---

**11.** 18 U.S.C. § 1964 reads, in pertinent part,

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Appellants would bear the burden at trial of proving injury. Absent a showing sufficient to establish the existence of actual injury, summary judgment is required. *Celotex Corp. v. Ca-*

*trett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

**12.** Appellees have provided no evidence to support the inference that financial loss or injury was incurred as a result of the proxy solicitations or the proposed shareholder derivative suit. A documented reduction in bank assets *concededly* resulted from "deliberate" acts of the bank, rather than from actions taken by appellees.