PROVIDENCE HEALTH PLAN, an Oregon non-profit corporation, Plaintiff–Appellant,

v.

Gary McDOWELL; Roselea McDowell, Defendants–Appellees.

Providence Health Plan, an Oregon non-profit corporation, Plaintiff–Appellant,

v.

Gary McDowell; Roselea McDowell, Defendants–Appellees.

Nos. 02–35263, 02–35841.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 5, 2003.

Filed March 24, 2004.

Amended Oct. 1, 2004.

Order Denying Rehearing and Rehearing En Banc Oct. 1, 2004.

---

William F. Gary, Sharon A. Rudnick and Arden J. Olson, Harrang Long Gary Rudnick, P.C., Eugene, OR, for the plaintiff-appellant.

Gordon T. Carey, Jr., Portland, OR, for the defendants-appellees.

Before BRUNETTI, T.G. NELSON, and GRABER, Circuit Judges.

BRUNETTI, Circuit Judge:

These appeals concern two actions by Providence Health Plan to recover benefits paid to its insureds, the McDowells. The first action, *"McDowell I,"* was for breach of contract and was filed in state court. *McDowell I* was removed to federal court and dismissed as completely preempted under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* The second action, *"McDowell II,"* was filed in federal court as an action for equitable relief under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). This action was also dismissed after the district court determined that Providence failed to state a claim under § 1132(a).

For the following reasons, we reverse the dismissal of *McDowell I,* but affirm as to *McDowell II.*

## BACKGROUND

In February of 1990, Gary McDowell applied for health coverage through Select-Care Health Plans, the health care insurance plan selected by his employer. Roselea McDowell, Gary's spouse, is covered under the same policy. The McDowells' policy was renewed every year thereafter with SelectCare and then, after Select-Care's 1997 merger with Providence, with both SelectCare and Providence. In January of 2000, the insurance policy was issued only through Providence.

The McDowells' insurance contract with Providence contains the following reimbursement provision:

> Providence Health shall be entitled to the proceeds of any settlement, whether or not responsibility is accepted or denied by the third party for the condition, or any judgment that results in a recovery from a third party, up to the amount of benefits paid by Providence Health Plan for the condition, less a proportionate share of reasonable attorney fees, whether such benefits are paid by Providence Health Plan before or after the settlement or recovery.

On February 13, 2000, the McDowells were injured in an automobile accident. Providence paid benefits of $18,741.81 for Gary's medical care and $13,687.37 for Roselea's care.

On May 25, 2000, the McDowells each signed agreements directing their attorney to reimburse Providence for benefits paid in the event of any recovery from a third party.

The McDowells sued the driver of the vehicle that hit them as well as the driver's employer. In February of 2001, the McDowells received a settlement for approximately $500,000.

Following the settlement, Providence unsuccessfully sought reimbursement from the McDowells in the amount of $21,727.55 under the insurance contract's reimbursement clause.

In October of 2001, Providence filed its first action against the McDowells in Linn County Circuit Court, alleging breach of contract. According to Providence, the McDowells agreed, in their insurance contract, that if they received money through any recovery action, they would reimburse Providence for the full value of benefits paid by Providence, less reasonable attorneys' fees. Providence contended that it was entitled to $21,727.55 pursuant to this provision.

The McDowells removed the contract action to federal court and filed a motion to dismiss, contending that the claim was preempted by ERISA. Providence filed a motion to remand.

On January 29, 2002, the district court denied the motion to remand and granted the McDowells' motion. The district court held that it had removal jurisdiction and that ERISA preemption barred Providence's claim.

In response to this dismissal, on April 12, 2002, Providence brought its second action in the United States District Court for the District of Oregon, this time under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). In this second case, Providence alleged that it was entitled to the equitable remedy of specific perform-

ance under § 1132(a)(3)(B) because it did not have an adequate legal remedy. Specifically, Providence sought an order mandating the McDowells to specifically perform the reimbursement provision under the insurance contract.

On August 28, 2002, the district court dismissed this second action, concluding that Providence was in reality seeking monetary relief despite couching its request in equity.

Providence timely appealed both dismissals, and both are presently before this court.

## DISCUSSION

### A. Standard of Review

 We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) and a determination of subject matter jurisdiction de novo. *Homedics, Inc. v. Valley Forge Ins. Co.,* 315 F.3d 1135, 1138 (9th Cir.2003); *FMC Med. Plan v. Owens,* 122 F.3d 1258, 1260 (9th Cir.1997).

### B. McDowell I

On appeal, Providence contends that the district court lacked removal jurisdiction over their breach of contract action.

 In order to be removable to federal court, a claim concerning a plan governed by ERISA must be preempted by ERISA and must fall within the scope of ERISA's enforcement provisions. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 62–66, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987); *see also Toumajian v. Frailey,* 135 F.3d 648, 654 (9th Cir.1998).

ERISA's preemption provision, 29 U.S.C. § 1144(a), provides that ERISA's provisions shall generally "supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b)

of this title." While this section suggests that the phrase "relate to" should be read broadly, the Supreme Court has recently admonished that the term is to be read practically, with an eye toward the action's actual relationship to the subject plan. *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655–56, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (stating that "infinite relations cannot be the measure of preemption" in construing "relate to").

■ Generally speaking, a common law claim "relates to" an employee benefit plan governed by ERISA "if it has a connection with or reference to such a plan." *Id.* (internal quotation marks omitted); *see also Blue Cross of Cal. v. Anesthesia Care Assocs. Med. Group, Inc.*, 187 F.3d 1045, 1052 (9th Cir.1999).

In evaluating whether a common law claim has "reference to" a plan governed by ERISA, the focus is whether the claim is premised on the existence of an ERISA plan, and whether the existence of the plan is essential to the claim's survival. If so, a sufficient "reference" exists to support preemption. *California Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324–25, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997) (citing *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 140, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

■ In determining whether a claim has a "connection with" an employee benefit plan, courts in this circuit use a relationship test. Specifically, the emphasis is on the genuine impact that the action has on a relationship governed by ERISA, such as the relationship between the plan and a participant. *See Abraham v. Norcal Waste Sys., Inc.*, 265 F.3d 811, 820–21 (9th Cir.2001); *Blue Cross of Cal.*, 187 F.3d at 1052–53.

■ Here, the district court determined that the breach of contract action related to an ERISA plan because it sought the enforcement of a plan provision, the reimbursement provision. The district court erred in this respect because Providence's action for breach of contract does not have the requisite "connection with" or "reference to" an ERISA plan. Providence is simply attempting, through contract law, to enforce the reimbursement provision. Adjudication of its claim does not require interpreting the plan or dictate any sort of distribution of benefits. Providence has already paid ERISA benefits on behalf of the McDowells, and they are not disputing the correctness of the benefits paid. Rather, Providence claims that the McDowells have breached two promises: (a) the reimbursement provision incorporated into their ERISA plan, as it applies to monies paid to them by a non-ERISA third party, and (b) their agreement to direct their lawyer to reimburse Providence in the event of a settlement. Because this is merely a claim for reimbursement based upon the third-party settlement, it does not "relate to" the plan. *See Blue Cross of Cal.*, 187 F.3d at 1053–54 (holding action for reimbursement between insurers and medical providers not preempted, in part because the claims did not require construction of the subject plan's terms).

■ Also, Providence's breach of contract action fails the second requirement of removal jurisdiction because it does not fall within ERISA's civil enforcement provision, 29 U.S.C. § 1132(a). As a fiduciary to the plan, Providence's only vehicle for relief in addressing violations or seeking enforcement of a plan is § 1132(a)(3). However, that section allows a fiduciary to seek only equitable relief for violation of the plan. Here, Providence is seeking ordinary damages—monetary relief—based upon contractual remedies that arise under

state law. Therefore, its claim is not within ERISA's civil enforcement provisions. *Abraham,* 265 F.3d at 824.

Our conclusion is further buttressed by a recent Supreme Court decision and prior decisions of this circuit dismissing ERISA actions brought by insurers for reimbursement of benefits.

Most recently, in *Great–West Life & Annuity Insurance Co. v. Knudson,* 534 U.S. 204, 220, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002), the Supreme Court concluded that § 1132(a)(3) did *not* authorize a fiduciary to enforce a reimbursement provision and acknowledged that other remedies outside ERISA might be available to the fiduciary. Further, the Court left open the issue that we decide today: "whether a direct action by petitioners against respondents asserting state-law claims such as breach of contract would [be] preempted by ERISA." *Id.*

Previous decisions of this circuit concerning reimbursement actions by insurers are also consistent with *Great–West* and foretold our decision with regard to such actions. *See, e.g., Cement Masons Health & Welfare Trust Fund for N. Cal. v. Stone,* 197 F.3d 1003, 1007 (9th Cir.1999); *Owens,* 122 F.3d at 1262 & n. 2. In both cases, this court held that insurance companies could not look to ERISA's provisions allowing equitable relief to obtain reimbursement from their insureds. *See Cement Masons,* 197 F.3d at 1007 (recognizing implicitly, in dismissing an insurance company's ERISA claim for equitable relief, that there may be other theories outside ERISA to seek relief from the insured); *Owens,* 122 F.3d at 1262 & n. 2 (dismissing insurer's claims for reimbursement under § 1132(a)(3), and specifying that "FMC will have to pursue its claims under the Plans in state court if it wishes to receive the reimbursement").

We are cognizant that our decision is in conflict with the decisions of some states. *See, e.g., Liberty N.W. Ins. Corp. v. Kemp,* 192 Or.App. 181, 85 P.3d 871 (2004) (holding that insurer's action for reimbursement is preempted by ERISA); *Jefferson–Pilot Life Ins. Co. v. Krafka,* 50 Cal. App.4th 190, 57 Cal.Rptr.2d 723 (1996) (holding that insurer's action for reimbursement against insured "relates to" an ERISA plan). However, in light of our precedent and the Supreme Court's recent direction in *Great–West,* we cannot agree with these courts' construction of "relate to," and instead we agree with those states that have found no ERISA preemption. *See, e.g., Behavioral Sci. Inst. v. Great–West Life,* 84 Wash.App. 863, 930 P.2d 933 (1997) (finding no preemption of action by self-insured employer against "stop-loss" reinsurer for breach of contract and bad faith where reinsurer denied stop-loss coverage of employee's medical treatment).

Because Providence's breach of contract claim is not preempted under § 1144 and does not fall within the scope of § 1132(a), the district court lacked removal jurisdiction, and the case must be remanded to state court.

## C. *McDowell II*

Following dismissal of *McDowell I,* Providence brought a suit in federal court under 29 U.S.C. § 1132(a)(3) seeking specific performance of the reimbursement provision. The district court rejected Providence's "lawyerly inventiveness" and dismissed Providence's action, stating that "Plaintiff's ERISA action, brought 'in equity' but seeking monetary relief, cannot proceed."

For the following reasons, the district court is affirmed.

### 1. *Claim Preclusion*

█ Claim preclusion bars any "lawsuits on 'any claims that were raised *or could have been raised'* in a prior action." *Stewart v. U.S. Bancorp,* 297 F.3d 953, 956

(9th Cir.2002) (quoting *Owens v. Kaiser Found. Health Plan, Inc.,* 244 F.3d 708, 713 (9th Cir.2001)). Claim preclusion applies if there is " '(1) an identity of claims; (2) a final judgment on the merits; and (3) identity or privity between parties.' " *Id.* (quoting *Kaiser Found. Health Plan, Inc.,* 244 F.3d at 713).

■ All three requirements are met here. First, the two actions clearly involved the same parties disputing the same contractual provision. Additionally, a finding of preemption is a final judgment on the merits. *Id.* at 956–57 (holding that the plaintiffs' ERISA claims should have been brought in the previous state court litigation that was removed and dismissed for preemption, rather than in a subsequent federal proceeding).

Accordingly, this action is barred under claim preclusion.

### 2. Failure to State ERISA Claim

■ ERISA authorizes fiduciaries to bring suit in federal court for "appropriate equitable relief" to remedy violations of a plan or to enforce its provisions. 29 U.S.C. § 1132(a)(3)(B). In determining whether an action for equitable relief is properly brought under ERISA, courts evaluate "the 'substance of the remedy sought ... rather than the label placed on that remedy.' " *Westaff (USA) Inc. v. Arce,* 298 F.3d 1164, 1166 (9th Cir.2002) (quoting *Watkins v. Westinghouse Hanford Co.,* 12 F.3d 1517, 1528 n. 5 (9th Cir.1993)), *cert. denied,* 537 U.S. 1111, 123 S.Ct. 901 (2003).

■ The district court was correct in concluding that Providence's claim lay outside the scope of § 1132(a)(3). While Providence terms this an action in equity for specific performance, at bottom, Providence is simply attempting to enforce a contractual obligation for repayment. This is "a classic action at law and not an equitable claim." *Id.* As has been noted by this court before in the context of

§ 1132, "[a]lthough they often dance around the word, what petitioners in fact seek is ... monetary relief for all losses their plan sustained as a result of the alleged breach of the reimbursement provision." *Id.* (internal quotation marks omitted).

As noted above, the Supreme Court in *Great–West* recently confirmed that the damages Providence seeks are unobtainable under ERISA's enforcement provision. In reaching this conclusion, the Court explained that, regardless of the chosen label, such monetary reimbursement constitutes legal rather than equitable relief:

> The basis for petitioners' claim is ... that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

534 U.S. at 214, 122 S.Ct. 708.

In that passage, *Great–West* squarely resolves that Providence's claim for monetary damages against the McDowells is a claim for a legal remedy, despite Providence's attempt to disguise its claim in equitable clothes. *See also Westaff,* 298 F.3d at 1166–67 (declining to construe fiduciary's claim for money damages held in escrow account as a claim for equitable relief under ERISA).

### CONCLUSION

For the foregoing reasons, we RE-VERSE the district court's dismissal of *McDowell I,* and remand with instructions to remand *McDowell I* to state court, and AFFIRM the district court's dismissal of *McDowell II.*

Costs are awarded to appellant Providence Health Plan.

### ORDER

The panel has voted to deny appellees' petition for rehearing. Judge Graber has voted to deny the petition for rehearing en banc, and Judges Brunetti and T.G. Nelson so recommend.

The full court has been advised of the petition for rehearing en banc and an active judge has requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R.App. P. 35.

The petition for rehearing and the petition for rehearing en banc are denied.

No further petitions for rehearing or petitions for rehearing en banc may be filed.

THOMAS, Circuit Judge, with whom PREGERSON, REINHARDT, HAWKINS, McKEOWN, and BERZON, Circuit Judges join,[1] dissenting from the denial of rehearing en banc:

I respectfully dissent from the decision of the court not to rehear this case en banc. This decision marks a profound change in ERISA law and a significant deviation from Supreme Court and Ninth Circuit precedent. It is a harsh result that will be felt in human terms by subjecting plan participants to previously preempted lawsuits while denying them the concomitant right to assert their own claims based on the same plan document or insurance policy.

The Supreme Court has observed that "ERISA is a comprehensive and reticulated statute, the product of a decade of congressional study of the Nation's private employee benefit system." *Great–West Life & Ann. Ins. Co. v. Knudson,* 534 U.S. 204, 209, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal quotation marks and citations omitted). As part of its expansive regulation of employee benefit plans, ERISA provides for a federal cause of action for civil claims to enforce the provisions of an ERISA plan. In so providing, "Congress's primary goal was to replace the patch-work quilt of state law with a uniform body of federal law and to provide litigants with access to federal courts to enforce their newly created rights." Schneider and Freedman, *ERISA: A Comprehensive Guide* (2d. ed.2002), § 8.01, p. 8–3. Thus, courts have construed extra-statutory remedies available under ERISA quite narrowly. As the Supreme Court has stated, "ERISA's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate directly." *Id.* (internal quotation marks and citations omitted) (emphasis in original).

Indeed, "[w]e have repeatedly emphasized that 'ERISA contains one of the broadest preemption clauses ever enacted by Congress.'" *Security Life Ins. Co. of America v. Meyling,* 146 F.3d 1184, 1188 (9th Cir.1998) (quoting *Evans v. Safeco Life Ins. Co.,* 916 F.2d 1437, 1439 (9th Cir.1990)). ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). Thus, in a variety of contexts, we have held that ERISA preempts state statutory and common law actions filed by plan participants against third party insurers of ERISA plans. *See Elliot v. Fortis Benefits Ins.*

---

1. JUDGE NOONAN, who cannot qualify as a dissenter to the outcome, expresses his agreement with Judge Thomas.

Co., 337 F.3d 1138 (9th Cir.2003); *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1008 (9th Cir.1998); *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 819 (9th Cir.1992) *Tingey v. Pixley–Richards West, Inc.*, 953 F.2d 1124, 1133 (9th Cir.1992); *Kanne v. Conn. Gen. Life Ins. Co.*, 867 F.2d 489, 493–94 (9th Cir.1988).

On the other hand, we have also held that insurers' state common law and equitable reimbursement actions against plan participants were also preempted by ERISA. *See Westaff (USA), Inc. v. Arce*, 298 F.3d 1164, 1167 (9th Cir.2002); *Reynolds Metals Co. v. Ellis*, 202 F.3d 1246 (9th Cir.2000); *Cement Masons Health and Welfare Trust Fund for Northern California v. Stone*, 197 F.3d 1003 (9th Cir.1999); *FMC Medical Plan v. Owens*, 122 F.3d 1258 (9th Cir.1997).

Thus, until now, our circuit has taken a consistent view of ERISA preemption in the context of common law and equitable actions between ERISA plan participants and third party insurers. If the cause of action involves an ERISA-governed relationship, the parties are confined to the remedies prescribed by ERISA. This case marks a radical departure from our precedent, allowing an ERISA insurer to pursue independent claims for reimbursement from the plan participant. This cannot be reconciled with our precedent, nor with the Supreme Court's ERISA decisions. Indeed, the Supreme Court's recent decision in *Aetna Health Inc. v. Davila*, —— U.S. ——, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) further bolsters the opposite conclusion.

This holding is also inconsistent with state courts that have applied ERISA preemption to reimbursement claims. *See, e.g., Liberty N.W. Ins. Corp. v. Kemp*, 192 Or.App. 181, 85 P.3d 871 (Or.Ct.App.2004) (holding that insurer's action for reimbursement is preempted by ERISA); *Jefferson–Pilot Life Ins. Co. v. Krafka*, 50 Cal.App.4th 190, 57 Cal.Rptr.2d 723 (Ct. App.1996) (holding that insurer's action for reimbursement against insured "relates to" an ERISA plan). Thus, we are now faced with the conundrum of federal courts in Oregon and California forced to allow state remedies and state courts in those areas holding those same state remedies federally preempted.

As a practical matter, the decision destroys a level playing field and creates the incongruous consequence that insurers may sue plan participants for reimbursement based on provisions in the insurance contract, but that plan participants cannot file suits or counter-claims, against insurers for breach of contract or bad faith in claim administration under the contract. Thus, insurers are now insulated from tort liability for even the most egregious acts, while permitted to sue covered employees based on the same policy or plan. Such a result is incompatible with the theory and structure of ERISA, as construed by the Supreme Court. The idea of ERISA was to provide uniform federal law and procedure regarding covered employee benefit programs. To single out one party for a special exemption is antithetical to this concept and will produce harsh and anomalous results.

If we were considering ERISA preemption on a blank slate, our course might well have been different. If ERISA had been construed to allow plan participants to enforce their state common law and statutory rights outside the confines of ERISA remedies, the panel decision would be both logical and consistent. There are good arguments as to why the entire scope and nature of ERISA preemption ought to be reexamined. As Justice Ginsburg has observed "a series of the Court's decisions has yielded a host of situations in which persons adversely affected by ERISA-proscribed wrongdoing cannot gain make-

whole relief." *Aetna Health Inc.*, —— U.S. at ——, 124 S.Ct. at 2502 (Ginsburg, J., concurring).

However, we are not faced with a blank slate and the breadth of ERISA preemption is well-settled. The impact of this decision is to provide a special exemption for one party while handcuffing the other. Our court should have granted rehearing en banc to rectify this error.

